AARON MAY, APPELLANT, v. ISAAC CAHN, APPELLEE.

[FILED MAY 18, 1892.]

**Review:** PARTNERSHIP. In an action for a partnership accounting, the defendant denied the existence of a partnership, and the evidence upon this question is conflicting. *Held,* That the findings thereon by the trial court against the plaintiff, not being clearly wrong, will not be disturbed.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*Pound & Burr,* for appellant.

*Harwood, Ames & Kelly,* and *E. F. Pettis, contra.*

NORVAL, J.

This suit was brought by appellant against appellee for an accounting between them as partners. Defendant denies the existence of a partnership and alleges that plaintiff was employed solely as clerk in his store, at a stipulated compensation; that plaintiff has received in part payment for his services goods of the value of $160, and that he is ready and willing to pay plaintiff the balance due him. Upon the trial the court found that no partnership existed between the parties, and that there was due plaintiff $185, for which sum judgment was rendered against defendant.

May is and has been a resident of Hastings for many years, and Cahn lives in the city of New York. Each had had large experience in the mercantile business. The former had no means, and the latter was wealthy. In January, 1889, a large stock of goods in the city of Hastings, formerly owned by one John Stich, which was then in the hands of a receiver, was about to be offered for sale. May entered into negotiations with Cahn to induce him to purchase the goods, which resulted in Cahn going to Hastings and buying the entire stock, for which at Hastings he paid $25,000. Subsequently goods were sold therefrom to the amount of about $20,000, and the remainder of the stock was removed to the city of Lincoln, where it was placed upon the market. May assisted in the purchase from the receiver, as well as in the sale of the goods at Hastings.

The testimony of plaintiff tends to show that, prior to the purchase from the receiver, plaintiff and defendant entered into an agreement, by the terms of which Cahn was to furnish all the money with which to buy the stock and May was to assist in making the purchase and in the resale of the goods. He was to receive as his part of the venture ten per cent of the net profits, together with $20 per week

for the time by him devoted to the business; that defendant was to have as his share ninety per cent of the net profits of the business; that the goods were bought for the sum above stated, the defendant furnishing the funds therefor; that the parties entered upon said partnership business on the 22d day of January, 1889 and carried on the same at the city of Hastings until February 21st following, during which time over $20,000 worth of said goods were sold; that on said last named date defendant removed the remaining portion of the stock to the city of Lincoln, where he is selling the same; that he refused plaintiff access to the books of said firm, as well as to the room and stock of goods, and forcibly ejected him from the store-room where the same were being sold and has converted to his own use all of said goods; that the profits in said business amounted to at least $25,000 and that there is now due plaintiff as his share thereof the sum of $2,500, besides $20 per week for the time and attention by him devoted to the business. Plaintiff is corroborated by the testimony of his wife and daughter as to the terms of agreement.

The defendant in his testimony denies the existence of a partnership. He further testified that prior to buying the goods he went to plaintiff's house and in presence of Ed. Cerf had a conversation with May, in which Cahn promised, in case he bought the stock, to give plaintiff ten per cent of the net profits which might be realized from the investment; that nothing was then said about plaintiff recovering $20 per week; that shortly thereafter, and prior to the opening of said stock for sale to the public, defendant agreed in lieu of the ten per cent net profits to employ plaintiff in the store as clerk at $20 per week and the further sum of $250 in cash, which proposition plaintiff accepted; that in pursuance of said agreement he clerked for defendant for four weeks and then voluntarily quit said employment; that plaintiff received in payment goods out of the store to the amount of $160.

Edward Cerf testified that he was present and heard the first conversation between the parties in regard to the purchase of the stock in question; that Cahn said to plaintiff, "I will tell you what I will do with you; if I do well with this stock I will give you ten per cent of what I make"; that there was not any talk at that time about a partnership nor about paying plaintiff $20 a week as clerk hire.

The plaintiff on rebuttal testified that he never agreed with defendant at any time to accept $250 in lieu of the ten per cent profits.

There is considerable conflict in the testimony, not only as to the terms of the agreement by the parties, but upon the question whether the contract was changed by them. Plaintiff affirms, by the arrangement made at his house with Cahn, that he was to receive $20 a week for his work, in addition to ten per cent of the net profits. This Cahn denies. In our view, it matters not whether the contract was as testified to by plaintiff, or whether it was as defendant contends, for in either case it possessed all the elements necessary to constitute a copartnership agreement. Cahn was to furnish the funds, and May was to contribute his services to the project, for which he was to be remunerated by a portion of the profits. He was to participate in the profits as such. Each was to have a certain per cent of the net profits, which implies that the losses were to be borne between them, although there was no express stipulation in the contract to that effect. (1 Lindley on Partnership, 13.)

The next and the most important inquiry is, was the business carried on under the partnership agreement, or under a new and different contract? It is observable that upon this branch of the case the testimony is conflicting. Appellee insists that a second contract was entered into before the goods were offered for sale, by which appellant agreed to accept $250 and the further sum of $20 per week for

the time he should devote to the business, instead of a portion of the profits. The defendant alone testified that such was the contract, which plaintiff denies. The conduct of the parties tends to corroborate the defendant upon this point. It appears from the record that the business was carried on in Cahn's name, and in his name the property was insured. The money arising from the sale of the goods was deposited in the bank to appellee's credit. He hired and fixed the salaries of the numerous clerks who assisted in the store. It is in evidence that May persisted in smoking in the store, against the defendant's objection, and finally Cahn states to May, " if you do not quit smoking, there will be one clerk less," to which language no objection was made by plaintiff. It further appears that prior to the bringing of this action appellant brought an attachment suit before a justice of the peace against Cahn for $200 claimed to be due him, which proceeding May subsequently dismissed, and then instituted this suit to compel an accounting. In view of defendant's testimony and the above facts, we are of the opinion the evidence was sufficient to authorize the trial court in finding that a second contract was made as appellee contends and that the business was not carried on under a partnership agreement. While the testimony in behalf of appellant would have justified a finding that there was a partnership, yet we cannot reverse the case without overruling the rule frequently announced by this court, to the effect that the findings of a trial court upon disputed questions of fact will not be disturbed unless clearly wrong. The judgment is

                                        AFFIRMED.

THE other judges concur.